UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LYDELL SCOTT, ET AL. | CIVIL ACTION NO. 24-0822 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| FRANYK, INC., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This lawsuit arises from an eighteen-wheeler wreck in a major construction zone along Interstate 20 in Bossier City. Georgely Eugene ("Eugene") operated a big rig for his employer, Franyk, Inc. ("Franyk"), and entered the construction zone despite warnings that prohibited commercial trucks. The wreck happened when Eugene merged from the center lane into the right lane where Lydell Scott ("Scott") had already been driving. Eugene struck Scott's vehicle, and allegedly injured Scott. Now, Scott has filed a motion for partial summary judgment, and for the following reasons, the motion is granted in part and denied in part.

### Background

On March 25, 2024, a large section of Interstate 20 was closed to commercial trucks because of major road construction. Record Document 46-2 at 11; *see also* La. Dep't Transp. Dev., https://www.dotd.la.gov [https://perma.cc/JW7V-LCB5] (last visited May 1, 2026). Signage along the interstate provided notice to drivers of the closure, stating that commercial trucks could not enter this construction zone. *Id.* Eugene ignored the warnings. *See id.* at 10-11.

Near the start of the construction zone, three lanes of traffic condensed into a single, right-hand lane. *Id.* at 12. Scott testified in his deposition that he had been in the right-hand lane when Eugene's commercial truck merged into his lane. Record Document 46 at 56. An eyewitness corroborated Scott's account of the wreck, testifying that Eugene's truck merged from the middle lane into the right lane. Record Document 46-1 at 8. There had been heavy traffic where the lanes converged, and according to the witness, Eugene had "cut everybody off" with his maneuver. *Id.* at 9. Both Scott and the eyewitness testified that Scott had been established in the far-right lane when Eugene attempted to merge and hit Scott's vehicle. *Id.* at 8-10; Record Document 46 at 58. When Eugene's truck crashed into Scott's sedan, it "t-boned" Scott's car and allegedly injured Scott's back. Record Document 46-2 at 14. A traffic camera, Record Document 43, captured the wreck's aftermath:



### Standard

Federal Rule of Civil Procedure 56(a) requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." When the burden at trial rests on the movant, the movant must "demonstrate the absence of a genuine issue of material fact." *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant does so, the non-movant must set "forth specific facts showing the existence of a genuine issue concerning every essential component of its case." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). This burden requires more than metaphysical doubt, conclusory or unsubstantiated allegations, or a mere scintilla of evidence. *Little*, 37 F.3d at 1075.

### Analysis

After the wreck, Scott and his wife filed a petition for damages against Eugene and his employer, Frank, alleging that Eugene acted negligently when he disobeyed warnings placed on a highway under construction, failed to keep his proper lane, and failed to yield to right of way traffic. Record Document 1-4 at 2. Now, Scott has moved for partial summary judgment on liability, comparative fault, and medical causation. Record Document 40.

### I.    Liability

In a diversity case, like this one, federal courts apply state substantive law. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). Louisiana Revised Statute § 32:237 "imposes prima facie responsibility on a person violating warning signs placed upon a highway under construction or repair." *Kruebbe v. Nat'l Fire & Mar. Ins.*, 274 So.2d 832, 835 (La. Ct. App. 1973). Under this statute, a driver cannot "disobey the instructions, signals, warnings, or markings of any warning signs,

signals, or barricades so placed upon any highway under construction or repair." La. Stat. Ann. § 32:237 (2025). A driver who violates the statute is "prima facie at fault and responsible for any damage to persons or property resulting from the said violation." *Id.*

Here, the Court finds that Eugene is solely at fault for the traffic accident. Neither party disputes that Interstate 20 had been a highway under construction when the wreck occurred. *See, e.g.*, Def's Opp'n Mem. Summ. J. 7, Record Document 42. Moreover, signage placed along Interstate 20 warned and prohibited commercial trucks from entering the construction zone. Record Document 46-2 at 11. Eugene disobeyed these "warning signs" and entered the construction zone in his tractor trailer, and through operation of § 32:237, he is "prima facie at fault" for the damage resulting from his wreck with Scott.

Alternatively, even if § 32:237 did not apply, the Court would still hold that Eugene is 100% at fault for the traffic wreck. Louisiana Revised Statute § 32:79 (1) requires that a vehicle "be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." At least two district courts, including this one, have applied this statute and found commercial trucks liable for striking another vehicle when merging lanes. *See, e.g.*, *Henry v. Sunshine Freight, Inc.*, No. 17-380, 2018 WL 5290168, at *3 (W.D. La. Sept. 17, 2018) (holding that the driver "failed to determine, before making a lane change, that it could be made safely without endangering other motorists."); *Bethel v. Nat'l Indem. Ins. Co.*, No. 15-391, 2017 WL

4

125028, at *2 (M.D. La. Jan. 12, 2017) (noting that the big rig owed "a greater duty of care as the motorist changing lanes than the duty owed by [victim] who was traveling straight in the center lane.").

In this case, Eugene failed to determine that he could merge lanes safely before he moved from the middle lane into the right lane. Scott testified that he had been in the right lane of traffic before Eugene tried to merge. Record Document 46 at 58. An eyewitness also corroborated that Scott's vehicle was traveling in the right lane. Record Document 46-1 at 9. Both Scott and the eyewitness testified that Eugene left his lane of travel when he merged into the right lane and that Eugene's decision to merge is what caused the wreck. *Id.*; Record Document 46 at 55. For his part, Eugene did not appear for a deposition and thus offered no testimony to rebut this testimony about his unsafe lane change.

Nevertheless, Franyk made a specious effort to manufacture a disputed material fact on liability. Among other things, Franyk claims that Scott's testimony is unreliable because Scott testified that he had been "stopped" in the lane when the accident occurred and because Scott could not "locate his vehicle in the footage" before the collision. Record Document 42 at 5. The Court is not persuaded. Regardless of whether Scott's vehicle was stationary or moving, the corroborated testimony remains that Scott was established in the traffic lane when Eugene merged into it, striking him. Furthermore, although Scott's vehicle does not appear in the footage, and thus cannot corroborate his account, it does not contradict it either. The occurrence of the wreck is undisputed, and the corroborated witness testimony

5

establishes that Eugene, not Scott, unsafely merged into another lane of traffic. Therefore, the Court holds that Eugene is solely liable for the collision with Scott.

## II.   Comparative Fault

In answering the petition, Franyk asserted comparative fault as an affirmative defense, alleging that Scott's own negligence caused the wreck. Record Document 8 at 2. Under Louisiana law, the defendant has the burden of proving comparative fault. *Dupree v. City of New Orleans*, 765 So.2d 1002, 1015 (La. 2000). (The plaintiff is entitled to summary judgment when he points to the lack of factual support for the defendant's affirmative defense. *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991). In turn, the defendant is "required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Here, Franyk made no effort to prove or otherwise identify evidence that would establish Scott acted negligently in the wreck. This Court will not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* Accordingly, Scott is entitled to summary judgment on Franyk's claim of comparative fault.

## III.   Medical Causation

In a personal injury action, the plaintiff has the burden to prove medical causation. *Maranto v. Goodyear Tire & Rubber Co.*, 650 So. 2d 757, 759 (5th Cir. 1995). The plaintiff must prove a "causal relationship between the injury sustained and the accident which caused the injury." *Id.* As the Louisiana Supreme Court has

explained, the "test for determining the causal relationship…is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident." *Id.*

Scott argues in his motion for summary judgment that the wreck caused unspecified "cervical and lumbar injuries." Record Document 44 at 7. Scott further argued that his unspecified injuries caused him to have permanent "neck and lower back pain." *Id.* at 9. In support, Scott offered the testimony of his treating spine physician who reached several conclusions, including that "[it]s more medically probable than not that the March 15, 2024 wreck caused an injury to Lydell Scott's neck and low back." Record Document 46-3 at 32.

In response, Franyk argues that a genuine dispute exists whether Scott's unspecified injuries and pain resulted from the wreck or from a preexisting condition. Record Document 42 at 8-9. The Court agrees. Although Scott may recover for aggravation of a preexisting condition, Scott must still establish a "causal link between the tortious conduct and the aggravation[.]" *Guillory v. Lee*, 16 So.3d 1104, 1124 (La. 2009).

Here, the treating physician acknowledged that he discovered Scott had a degenerative condition in his spine during an MRI after the accident. Record Document 46-3 at 21. Moreover, the treating physician admitted that Scott's degenerative condition developed over months and years and existed before the wreck. *Id.* Although the treating physician ultimately concluded that the wreck caused Scott's unspecified injuries and pain, he also admitted that "[t]here's nothing

7

specifically identified on either the cervical or the lumbar MRI that I could definitely attribute that happened at the accident." *Id.* at 23.

Because of the conflict in the treating physician's testimony, a genuine dispute exists whether the unspecified injury and pain is an "aggravation of the preexisting condition" or a symptom of the preexisting condition itself. *See also Est. of Adams v. Home Health Care of La.*, 775 So.2d 1064, 1065 (La. 2000) ("Causation is an issue of fact that is generally decided at the trial on the merits.") Therefore, Scott's motion for summary judgment on medical causation is denied.

**DONE AND SIGNED** at Shreveport, Louisiana, this 7th day of May, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE